IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LARRY HOLLAND, as Special Administrator )
for the Estate of FLOYD HOLLAND, deceased, )
               )
     Plaintiff,         )
               )
v.                )    Case No.: 19-CV-663-CVE-JFJ
               )
TURN KEY HEALTH CLINICS, LLC, et al.,   )
               )
     Defendants.       )

## MOTION TO DISMISS
## BY DEFENDANT TURN KEY HEALTH CLINICS, LLC

  COMES NOW Defendant Turn Key Health Clinics, LLC (hereinafter "Defendant" or "Turn Key"), by and through the undersigned counsel, and moves this Court to dismiss this action against said Defendant pursuant to the Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this motion, Defendant respectfully submits the following Brief.

## STATEMENT OF THE CASE

  1. On November 26, 2019, Plaintiff filed his First Amended Petition in Creek County District Court Case No. CJ-2018-35, alleging claims under 42 U.S.C. § 1983 against Defendant Turn Key and sixty (60) additional defendants. (*See* Doc. 2-54).

  2. Plaintiff claims that Defendant Turn Key is liable under § 1983 based on Turn Key's alleged deliberate indifference to the medical needs of Decedent Floyd Holland (hereinafter "Holland"), while he was an inmate at Creek County jail. (Doc. 2-54, p. 2). Plaintiff further alleges that Turn Key deprived Holland of his constitutional rights by providing inadequate supervision, staffing, and training of its employees. (Doc. 2-54, p. 16, ¶ 71). Plaintiff also alleges that Turn Key promulgated, enforced, and maintained policies and practices that served as the moving force behind the constitutional deprivations allegedly suffered by Holland. *See Id.*

  3. In his First Amended Petition, Plaintiff makes no claims against Defendant Turn Key under Oklahoma State law, as those claims had previously been dismissed by Creek County District

Court on the basis of immunity from tort liability under the Oklahoma Governmental Tort Claims Act (OGTCA), 51 O.S. § 151, *et seq.* (*See* Doc 2-21 and Doc. 2-53). Contrary to Plaintiff's assertion in his First Amended Petition, Creek County District Court has held on two (2) different occasions that "Turn Key is an 'employee' under the GTCA, and, therefore, is immune from tort liability." (Doc. 2-21, ¶ II(E); *see also* Doc. 2-54 ("Turn Key is entitled to immunity from tort liability under the Oklahoma Government (sic) Tort Claims Act (OGTCA) as Turn Key is considered an 'employee' for the purposes of the OGTCA)). This decision is supported by the growing precedent in the Northern District. *See e.g,. Prince v. Turn Key Health Clinics, LLC*, 2019 WL 238153, *20 (N.D. Okla. Jan 16, 2019); *Birdwell v. Glanz*, 2019 WL 1130484, *10 (N.D. Okla. Mar. 12, 2019); *Burke v. Regalado*, 2019 WL 1371144, *3 (N.D. Okla. Mar. 26, 2019); and *Crocker v. Regalado*, 2019 WL 2146595, *4 (N.D. Okla. May 16, 2019).

    4. On December 6, 2019, Defendant Turn Key removed this cause to the United States District Court for the Northern District of Oklahoma, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. (*See* Doc. 2).

## ARGUMENTS AND AUTHORITIES

**PROPOSITION I: PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FEDERAL LAW.**

    Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to state a claim upon which relief may be granted, the claim should be dismissed as a matter of law. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007). For a complaint to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 554 U.S. 662 (2009). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded

claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

A motion to dismiss is properly granted when a complaint provides "no more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The factual allegations within the complaint "must be enough to raise a right to relief above the speculative level." *Id.* A plaintiff's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

**A. Plaintiff has failed to allege sufficient facts to show that Defendant Turn Key is liable under § 1983.**

 **1.** *Turn Key's actions and/or omissions do not rise to the level of deliberate indifference.*

 *a. Plaintiff has not met the objective component of the deliberate indifference claim.*

In order to state a viable claim under § 1983, Plaintiff must allege misconduct that is "so egregious as to subject the aggrieved individual to a deprivation of constitutional dimensions." *Wise v. Bravo,* 666 F.2d 1328, 1333 (10th Cir.1981). Not "every claim by a prisoner that he has not received adequate medical treatment" amounts to a constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence *deliberate indifference* to serious medical needs." *Id.* at 106 (emphasis added). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Id.* at 104. Neither malpractice nor a disagreement about medical judgment constitutes deliberate indifference. *Green v. Branson*, 108 F.6d 1296, 1304 (10th Cir. 1997).

The Supreme Court has held that deliberate indifference consists of an objective and a subjective component. *Farmer v. Brenan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294,

298-99 (1991). "The objective component requires showing the alleged injury is 'sufficiently serious.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "The subjective component requires showing the prison official 'knew [the inmate] faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088-89 (10th Cir. 2009). To establish a constitutional claim based on inadequate medical care, the prisoner "must prove *both* an objective component and a subjective component" of the alleged deliberate indifference. *Self*, 439 F.3d at 1230-31.

To satisfy the objective prong of the deliberate indifference test, Plaintiff must plead sufficient facts to establish that Holland's medical condition was "sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). A medical need is considered sufficiently serious if the condition "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014). If the inmate claims the harm was caused by a delay in treatment, he or she must show that "the delay resulted in substantial harm," such as a "permanent physical injury" or "an intermediate injury, such as the pain experienced while waiting for treatment and analgetics." *Id.* at 1193. However, "not every twinge of pain suffered as a result of delay in medical care is actionable;" only when "the pain experienced during the delay is substantial, the prisoner 'sufficiently establishes the objective element of the deliberate indifference test.'" *Kikimura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006).

Here, Plaintiff has not pled any facts sufficient to establish that Holland's passing was in any way related to the alleged acts or omissions by Defendant Turn Key. Based on Plaintiff's own allegations, Holland did not pass away in Creek County jail and was transported out of the facility on November 30, 2017. (Doc. 2-54, p. 9, ¶ 37). Although death can constitute substantial harm, Plaintiff

fails to offer sufficient facts to indicate that Holland died as a result of the alleged delay in treatment by Defendant Turn Key.

First, Plaintiff does not provide any evidence to show *when* Holland died, alleging only that he "*eventually* succumbed to the illness," indicating a significant period of time elapsing between Holland's release from jail and his passing. (Doc. 2-54, p. 10, ¶ 37) (emphasis added). Further, Plaintiff acknowledges that Holland did not die in Creek County jail. *See Id.* ("[Holland] was transported from the facility"). Finally, Plaintiff offers insufficient facts to establish what condition and in what manner allegedly caused Holland's death. *See Id.* A conclusory and vague allegation that Holland passed away from an unidentified "illness caused by conditions created by the Defendants" is insufficient to establish that Holland's death was the result of any acts or omissions by Defendant Turn Key. *See Id.*; *see also Hall*, 935 F.2d at 1110 ("conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based").

Although Plaintiff claims that Holland "experienced extreme suffering and pain caused by the delay in adequately responding to his worsening condition" [Doc. 2-54, p. 11, ¶ 45], Plaintiff's own allegations contradict this assertion, demonstrating that Turn Key providers promptly responded to Holland's medical needs. In *Scott v. Harris*, the U.S. Supreme Court held that if a plaintiff's story is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Although this is not a motion for summary judgment, the Court's reasoning that two contradicting allegations cannot both be taken as true is equally applicable under these facts. Here, Plaintiff's claims of delay in treatment are directly contradicted by the following alleged facts.

When Holland allegedly fell in the housing unit of Creek County jail, he was assessed by a

Turn Key Licensed Practical Nurse (LPN) and diagnosed with muscle sprains, accompanied with pain. (Doc. 2-54, p. 7, ¶ 22). Turn Key LPN provided an ice pack to Holland to treat his pain and charted his condition. (*See Id.*) Holland was also treated with NSAID medications, which are commonly prescribed for pain and inflammation. (*See Id.* at ¶ 23). Plaintiff's allegations further indicate that Turn Key staff continuously treated Holland for his condition by adjusting his medications as needed (*See Id.* at ¶¶ 28-30). Although Plaintiff claims that these adjustments in Holland's medications "overdosed [him] on NSAIDs" and "exposed him to substantial risk of serious harm" [*Id.* at ¶ 31], federal courts have held that "[d]ifferences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment also are not enough to state a deliberate indifference claim." *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir. 1976); *see also Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1277, n. 7 (10th Cir. 2001).

Even if Holland's pain from his alleged fall could be considered an obvious medical condition, there is no indication that this condition resulted in or contributed to Holland's death. Importantly, while Plaintiff alleges that Holland's limited mobility following his fall made him "highly susceptible to life-threatening secondary medical complications, to include pneumonia" [Doc. 2-54, p. 7, ¶ 24], Plaintiff fails to plead that Holland ever contracted pneumonia or any of the alleged complications, or that he passed away from those or related conditions.

With respect to Plaintiff's allegation that Holland was also suffering from "increased difficulty breathing" [Doc. 2-54, p. 9, ¶ 33], Plaintiff has failed to allege any facts to establish that Holland's difficulty breathing was obvious or substantial enough to rise to the level of cruel and unusual punishment necessary to establish the objective component of the deliberate indifference test. Likewise, Plaintiff has failed to plead sufficient facts to show that Holland's difficulty breathing resulted in or contributed to his death. Accordingly, Plaintiff has failed to plead sufficient facts to

establish that during his incarceration in Creek County jail, Holland suffered from any objectively medical conditions that resulted in his death.

### b. *Plaintiff has not met the subjective component of the deliberate indifference claim.*

Should this Court find that Holland's medical condition was objectively serious at the time of his incarceration, Plaintiff still must set forth sufficient facts to establish the subjective component of the deliberate indifference test, which requires a showing that the defendant "*kn[e]w of and disregard[ed]* an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837 (emphasis added).

Tenth Circuit precedent clearly provides that negligence alone is insufficient to state a claim under § 1983 for deliberate indifference to medical needs of a prisoner. *Green,* 108 F.3d at 1303. Mere negligence does not become a constitutional claim simply because Holland was a prisoner. *See Spencer v. Abbott*, 731 F. App'x 731, 744 (10th Cir. 2017). The deliberate indifference standard under § 1983 is higher than negligence; in order to be subject to liability under that standard, "the official must *both be aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference*." *Farmer,* 511 U.S. at 837 (emphasis added).

Deliberate indifference is "a stringent standard of fault, requiring proof that [defendant] disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In particular, the subjective component of the deliberate indifference test "requires a showing that the defendant acted with a *culpable state of mind*." *Gaston v. Ploegger*, 229 Fed. App'x. 702, 710 (10th Cir. 2007) (emphasis added). In that respect, "[t]he subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must *consciously disregard* a substantial risk of serious harm." *Self*, 439 F.3d at 1231 (emphasis added).

Here, Plaintiff utterly fails to establish the subjective prong of the deliberate indifference test and offers nothing more than a string of conclusory allegations asserted globally against all Turn Key employees, and at times against all named defendants, which is clearly insufficient to show "the

culpable state of mind" on the part of individual Turn Key providers. *See Gaston*, 229 Fed. App'x at 710. Plaintiff's general assertions like "Turn Key Employees knew Floyd [Holland] was at risk" are insufficient to show actual knowledge, absent any factual support. (Doc. 2-54, p. 13, ¶ 62); *see also Hall*, 935 F.2d at 1110 ("conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based").

Further, Plaintiff cannot state that Turn Key, a private corporate entity, had actual knowledge of Holland's alleged serious medical condition without identifying specific employees or agents of Turn Key allegedly possessing such knowledge. *See Knox v. First Sec. Bank of Utah*, 206 F.2d 823, 826 (10th Cir. 1953) (holding that "a corporation can act only through its officers and agents" and that "knowledge of the officers is generally imputed to the corporation"). The Tenth Circuit confirms that "corporation cannot commit any acts on its own. It can act only through its authorized agents." *In re C.W. Mining Co.*, 636 F.3d 1257, 1261 (10th Cir. 2011). Therefore, Plaintiff cannot establish the subjective prong of the deliberate indifference test against Defendant Turn Key without identifying specific Turn Key employees or agents who allegedly acted with the culpable state of mind and conscious disregard of Holland's serious medical needs because as a corporation, Turn Key is incapable of possessing the requisite state of mind. *See Id.*

Here, Plaintiff has not alleged sufficient facts to show that any Turn Key employees possessed the requisite state of mind to sustain a deliberate indifference claim. In his First Amended Petition, Plaintiff largely engages in global criticism of Defendant Turn Key, without identifying any particular Turn Key provider who is alleged to have had knowledge of Holland's condition and disregarded the same. (*See, e.g*. Doc. 2-54, p. 9, ¶ 35 ("Turn Key Employees responsible for Floyd [Holland] during this time routinely and systematically disregarded his medical needs")). Such conclusory allegations fail to delineate with any degree of specificity the actual conduct that would amount to deliberate

indifference on the part any particular Turn Key provider.

Federal courts have dismissed cases with conclusory allegations such as those made by Plaintiff, and the U.S. Supreme Court has specifically condemned such threadbare statements masquerading as purported facts. *Ashcroft*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996) (affirming dismissal of the plaintiff's inadequate medical care claim because the plaintiff's conclusory allegations did not rise to the level of deliberate indifference).

Plaintiff's other well pleaded allegations <u>actually negate</u> his conclusory claims of Turn Key's deliberate indifference. The alleged actions of a Turn Key employee identified by Plaintiff only as "Turn Key LPN" reflect prompt response to Holland's alleged fall injury. (*See* Doc. 2-54, p. 7, ¶ 22) (Turn Key LPN providing an ice pack to Holland to treat his pain and charting his condition). The alleged actions of Turn Key nurse Janes demonstrate that she assessed Holland's medical condition at intake and recorded his vitals and medical history. (*See* Doc. 2-54, ¶ 18). There is no indication that either Turn Key LPN or Nurse Janes deliberately disregarded Holland's medical needs. On the contrary, Plaintiff's allegations cited herein indicate that Holland was promptly assessed and treated by Turn Key providers.

Therefore, Plaintiff has failed to plead sufficient facts to establish either the objective or the subjective prong of the deliberate indifference test. Accordingly, Plaintiff's deliberate indifference claim against Defendant Turn Key should be dismissed, pursuant to the Federal Rule of Civil Procedure 12(b)(6).

   2. ***Plaintiff has failed to allege facts sufficient to state a constitutional claim against Defendant Turn Key based on the theory of municipal liability.***

The United States Supreme Court has consistently rejected *respondeat superior* as the basis

for liability under § 1983. *Monell v. N.Y.C. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978). "[T]he Supreme Court has long held that municipalities are not liable for the constitutional torts of their employees merely on a *respondeat superior* basis. Instead, 'municipalities are only liable for constitutional violations that they have directly caused.'" *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010), quoting *Monell*, 436 U.S. at 691. Thus, a municipality can be held liable under § 1983 only if it has an "official policy of some nature" that "'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 691-92.

While the Supreme Court has applied *Monell* to municipalities, the Circuit Courts have routinely applied *Monell* theory of municipal liability to private entities that are sued under § 1983. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216, n. 13 (10th Cir. 2003) (holding that *Monell*'s municipal liability theory applies equally to private entities acting under the color of state law). Accordingly, private corporations may not be held liable under § 1983 based upon *respondeat superior*, but may only be held liable where their *policies* caused a constitutional violation." *Dubbs*, 336 F.3d at 1216. Thus, to maintain a viable § 1983 claim against Turn Key, Plaintiff must allege sufficient facts under the theory of municipal liability. *See Monell*, 436 U.S. 658; *see also Dubbs*, 336 F.3d 1194. Defendant Turn Key submits that Plaintiff has failed to do so.

The municipal liability theory requires that plaintiff prove the existence of a "municipal policy or custom," and a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Monell*, 436 U.S. at 694 (holding that liability attaches under § 1983 only when the execution of government's policy or custom inflicts the injury). Further, "a municipality can be liable under § 1983 only where its policies are the '*moving force [behind] the constitutional violation*.'" *Canton*, 489 U.S. at 388-89 (emphasis added).

Municipal theory of liability requires that the municipality or governmental body be the final official policymaker. *Dodds*, 614 F.3d at 1202. In particular, the U.S. Supreme Court has stated that "it is when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694. The Court further clarified that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988), citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986).

The question of "whether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. at 483. Under Oklahoma law, that role belongs to the County Sheriff. *See* Okla. Stat. tit. 57, § 52 ("It shall be the duty of the sheriff of each county to provide bed, clothing, washing, board and *medical care* when required, and *all necessities for the comfort and welfare* of prisoners") (emphasis added). Further, the County Sheriff has the final decision-making and policy-making authority in all aspects of the jail operation as a matter of law. *See* Okla. Stat. tit. 57, § 47 ("[t]he sheriff . . . shall have charge of the county jail of his county"). Plaintiff himself admits that Bret Bowling, the elected Sheriff of Creek County, was the final policymaker for the Creek County Detention Center (CCDC). (*See* Doc. 2-54, p. 4, ¶ 7). Since Turn Key is not the official policymaker of Creek County jail, it cannot be held liable under the theory of municipal liability for any alleged constitutional violations arising out of jail policies. *See Dodds*, 614 F.3d at 1202. Therefore, Plaintiff's allegations that Turn Key is liable for Holland's damages resulting from enforcing a jail policy must fail as a matter of law. (*See* Doc. 2-54, ¶¶ 57-58).

More importantly, Plaintiff has not sufficiently identified any "deliberately indifferent" policies, practices, and/or customs that were allegedly promulgated, implemented, and followed

by Defendant Turn Key. In his First Amended Petition, Plaintiff makes a single vague reference to Turn Key's "policies that . . . served as the moving force behind the deprivations that caused the injuries and damages to Floyd Holland." (Doc. 2-54, p. 16, ¶ 71). However, Plaintiff utterly fails to sufficiently identify or describe any such policies allegedly promulgated, implemented and followed by Turn Key.

In order to state a valid § 1983 claim against Defendant Turn Key, Plaintiff must allege facts sufficient to show that Turn Key implemented and followed a <u>specific policy</u> or custom that <u>caused</u> the alleged constitutional deprivation. *See Monell,* 436 U.S. at 694. Even if, *assuming arguendo*, Plaintiff had sufficiently identified such Turn Key policies in his First Amended Petition, which is denied, Plaintiff still must allege "the specific treatments or care that [Holland] was denied as a result of the [alleged] practices," in order to sufficiently allege causation for the purposes of municipal liability. *Prince*, 2019 WL 238153, at *10. *Monell* has stressed the importance of the "causation" element for municipal liability in stating that "Congress did not intend § 1983 liability to attach where such causation was absent." *Monell,* 436 U.S. at 692.

Here, Plaintiff has failed to establish the required element of causation. Plaintiff's vague and conclusory reference to alleged Turn Key policies, without more, is insufficient to establish causation for the purposes of municipal liability as it fails to directly link a specific policy with the constitutional injury alleged. *Canton*, 489 U.S. at 385 (requiring a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *see also Monell*, 436 U.S. at 694.

In his First Amended Petition, Plaintiff identifies neither the manner nor the timing of Holland's death with respect to his stay at the Creek County jail. Consequently, Plaintiff cannot establish the causal link between the alleged acts and omissions of Turn Key providers and Holland's passing. In the same manner, Plaintiff does not explain how the alleged unidentified Turn Key policies

*caused* the purported constitutional deprivation allegedly suffered by Holland or served as the *moving force* behind it, as required under the municipal liability theory. *See Canton*, 489 U.S. at 388-89 ("a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation'"). As Plaintiff has failed to allege sufficient facts to link a specific Turn Key policy and the alleged constitutional violation, Plaintiff has failed to state a plausible claim for relief under the municipal liability theory.

Accordingly, Defendant Turn Key cannot be found liable under § 1983 based on that theory, and Plaintiff's § 1983 claims against Defendant Turn Key should thus be dismissed, pursuant to the Federal Rule of Civil Procedure 12(b)(6).

3. ***Defendant Turn Key is not liable on Plaintiff's claims of deliberately indifferent training and supervision.***

Under the theory of municipal liability, a municipality may be liable for the failure to train or supervise its employees only if "that failure results from 'deliberate indifference' to the injuries that may be caused." *Bryson v. City of Oklahoma City,* 627 F.3d 784 (10th Cir. 2010). As set forth by the U.S. Supreme Court in *Canton,* 489 U.S. 378, in order to maintain an action for failure to adequately train, Plaintiff must identify a <u>particular deficiency</u> in Defendant Turn Key's training program and establish a <u>causal link</u> between the identified training deficiency and Holland's alleged constitutional injury. *See Id*. at 391 ("the identified deficiency in the [defendant's] training program must be closely related to the ultimate injury"). Here, Plaintiff completely fails to identify any specific deficiency in Turn Key's training program.

With respect to medical personnel, the only Turn Key employees identified by Plaintiff in his First Amended Petition are "Nurse Janes" and "Turn Key LPN." (*See* Doc. 2-54). However, Plaintiff makes no specific allegations as to the manner in which either Nurse Janes or Turn Key LPN were inadequately trained. Further, Plaintiff alleges no facts to demonstrate

13

how the alleged unspecified deficiency in Turn Key training program may have resulted in a violation of Holland's constitutional rights. Plaintiff's conclusory global assertion that Turn Key's "inadequate supervision and staffing, inadequate training, and policies . . . served as the moving force behind [Holland's] deprivations" is woefully insufficient to establish deliberate indifference by Turn Key in the training and supervision of its employees. (Doc. 2-54, p. 16, ¶ 71).

Here, Plaintiff not only fails to identify a *particular inadequacy* in Turn Key's training, he also fails to establish how that particular inadequacy *directly caused* the alleged denial of medical care suffered by Holland. *See Canton,* 489 U.S. at 391. Finally, "municipal liability based on a policy of inadequate training requires proof of the municipality's 'deliberate indifference' to its inhabitants – i.e. the failure to train must 'reflect a "deliberate" or "conscious" choice by a municipality.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Here, Plaintiff does not allege any facts that would allow a reasonable inference that the alleged failure to provide adequate training and/or supervision to Nurse Janes, Turn Key LPN and/or other Turn Key employees resulted from Turn Key's deliberate indifference to Creek County inmates, including Holland.

Therefore, Plaintiff has wholly failed to plead facts sufficient to establish a claim for municipal liability against Turn Key for the alleged failure to train and/or supervise its employees. "As our precedent makes clear, proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*." *Connick,* 563 U.S. at 70; and *Canton*, 489 U.S. at 391-392. Accordingly, Plaintiff's claim of deliberately indifferent training and supervision against Defendant Turn Key

should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).

> **4. *Any claim against Defendant Turn Key for punitive damages under § 1983 should be dismissed.***

Based on the foregoing arguments, Defendant Turn Key asserts that it cannot be held liable under § 1983 in this case. Should this Court, nevertheless, allow this matter to proceed against Defendant Turn Key based on any of the alleged § 1983 claims, Plaintiff may not then seek punitive damages, as punitive damages are not available against a municipality on a claim brought under § 1983. *See City of Newport v. Fact Concerts, Inc.,* 433 U.S. 247, 271 (1981); *see also Butcher v. City of McAlester,* 956 F.2d 973, 976 (10th Cir. 1992). Although Defendant Turn Key is not a municipality for the purposes of liability under § 1983, if Plaintiff is permitted to pursue a cause of action against Defendant Turn Key under the theory of municipal liability, he cannot assert punitive damages against Defendant Turn Key as a matter of law. Accordingly, any claim for punitive damages based on the theory of municipal lability must be dismissed as to Defendant Turn Key.

## **CONCLUSION**

Plaintiff's § 1983 claims against Defendant Turn Key should be dismissed pursuant to the Federal Rule of Civil Procedure 12(b)(6) as Plaintiff has failed to state a claim upon which relief can be granted against Defendant Turn Key under federal law.

WHEREFORE, Defendant Turn Key Health Clinics, LLC respectfully prays that this Court grant its motion to dismiss all claims against it and for all other relief that is just and equitable.

Respectfully submitted,

*s/ Paulina Thompson*
SEAN SNIDER, OBA #22307
PAULINA THOMPSON, OBA #31736
JOHNSON, HANAN, VOSLER,
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: ssnider@johnsonhanan.com
E-Mail: pthompson@johnsonhanan.com
*Attorneys for Defendant Turn Key Health Clinics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on **December 23, 2019**, I electronically transmitted the foregoing document to the Clerk of this Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| J. Spencer Bryan | jsbryan@bryanterrill.com |
| Steven J. Terrill | sjterrill@bryanterrill.com |

*s/ Paulina Thompson*
Paulina Thompson